UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 09-10078-GAO

ROSA A. TORRES,
Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of the Social Security Administration,
Defendant.

OPINION AND ORDER
July 29, 2010

O'TOOLE, D.J.

Rosa Torres appeals the denial of her application for Supplemental Security Income ("SSI") benefits by the Commissioner of the Social Security Administration ("Commissioner"). Torres applied for SSI benefits on September 26, 2006, claiming that she was disabled.[1] (Administrative Tr. at 14 [hereinafter R.].) After her claim was denied both initially and on review, Torres filed a timely request for a hearing and a hearing was held before an administrative law judge ("ALJ") on July 30, 2008. (Id. at 14.) Torres and a vocational expert ("VE") testified at the hearing. (Id. at 25.) After the hearing, the ALJ issued a decision finding that Torres was not disabled. (Id. at 22.) The Decision Review Board affirmed the ALJ's decision and it became the final decision of the Commissioner. (Id. at 1.) Torres then filed an appeal of the final decision to this Court pursuant to 42 U.S.C. § 405(g).

---

[1] Torres alleged she became disabled on November 1, 2003. (R. at 111.) Applicants are not entitled to benefits for any time before filing their SSI application. 20 C.F.R. § 416.202(g). The issue on appeal is whether Torres was disabled after September 26, 2006.

Before the Court are cross-motions to reverse, and alternatively to affirm, the decision of the Commissioner. Concluding that the administrative record substantially supports the ALJ's decision and that no error of law was made, the Court now affirms the denial of the claim.

## I.   The Claim and its Denial

Torres was thirty-seven years old when she applied for SSI benefits. (Id. at 97.) She graduated from high school and completed two years of college in Puerto Rico. (Id. at 41, 116.) She had last worked at a daycare, (id. at 28), but had no work experience prior to that, (id. at 40). At the time of the ALJ hearing, Torres lived with her two sons (ages sixteen and seventeen) and was recently divorced from her abusive husband. (Id. at 28-29.) Her disability claims are based on a combination of limiting physical and psychiatric conditions, specifically, lupus, depression, and obsessive compulsive disorder ("OCD"). (Id. at 26.)

Torres was diagnosed with systemic lupus in December 2004. (Id. at 156.) She does not appeal the ALJ's findings regarding her physical functioning. The issue on appeal is limited to the ALJ's assessment of Torres's mental functional capacity.

Torres was treated by Guillermo Gonzalez, M.D. for her psychiatric symptoms beginning in December 2003. (Id. at 238.) In March 2005, Torres moved to Puerto Rico where she continued treatment at a local clinic both for her lupus and her depression. (Id. at 300-29.) She moved back to the United States in August 2006 and resumed psychiatric treatment with Dr. Gonzalez in October 2006. (Id. at 250.) Between October 2006 and May 2008, Torres was seen by Dr. Gonzalez nineteen times. (Id. at 250-60, 349-56.)

Dr. Gonzalez rated the severity of Torres's psychiatric symptoms on an ascending six-step scale using the terms "not present," "mild," "moderate," "moderately severe," "severe," and "extreme." He also rated her "restriction of activities of daily living" and her "difficulties in

maintaining social functioning" on an ascending five-step scale using the terms "none," "slight," "moderate," "marked," and "extreme." Finally, he assessed her "deficiencies of concentration[,] persistence[,] or pace resulting in failure to complete task in a timely manner" on another five-step scale that used the terms "never," "seldom," "often," frequent," and "constant." (Id.)

Dr. Gonzalez's progress notes for Torres written between October 2006 and May 2008 indicate that some of her symptoms were not always present. For example, Dr. Gonzalez assessed Torres's "distractibility" as "moderately severe" on eight visits, but "not present" on nine other occasions. (Id.) Even on those occasions when he assessed her "distractibility" as "moderately severe," however, Dr. Gonzalez rated restrictions on her activities or difficulties in social relations as "moderate," as distinguished from "marked." (Id.)

During this period, Dr. Gonzalez also assessed that Torres's deficiencies of concentration, persistence, or pace resulting in failure to complete a task in a timely manner occurred "often" fifteen times and "frequent[ly]" three times.[2] (Id.)

The numerical rating he gave Torres for her Global Assessment Functioning ("GAF") was 65 on sixteen occasions and 60 twice.[3] He did not indicate any ranking on one occasion. (Id.)

Finally, on a questionnaire form dated July 28, 2008, Dr. Gonzalez checked the answer "yes" to the question, "Do you believe that, due to the claimant's psychiatric symptoms, her

---

[2] In Dr. Gonzalez's ranking system, an event that occurs "often" occurs less often than one that is "frequent." (See R. at 250-60, 349-56.)

[3] The GAF scale is a way of expressing the severity of observed symptoms. A GAF between 51 and 60 indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational or school functioning (e.g., few friends, conflicts with peers or co-workers)." A GAF between 61 and 70 indicates "some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household)." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000).

concentration would be impaired to the extent that she would be "off task" for more than one scheduled hour in an eight hour work day?" (Id. at 357.)

On March 6, 2007, Charles Howland, Ph.D. examined Torres at the request of the Massachusetts Rehabilitation Commission Disability Determination Services (Id. at 177-80.) Dr. Howland described Torres as having "severe difficulty with problems involving attention and concentration." (Id. at 179.) Dr. Howland also commented that Torres's memory recall, reasoning, and judgment were "very poor." (Id.) Torres was able to recall her age and date of birth, but could not recite her phone number. (Id.) Howland determined Torres had a "fair" orientation in time, noting that she thought it was February 2007 when it was really March 2007.[4] (Id.) Torres also denied having suicidal thoughts. (Id.) Dr. Howland noted he did not directly observe Torres's OCD and regarded her description of her OCD symptoms as vague. (Id. at 177-79.) Dr. Howland concluded that Torres had "Major Depression, single episode, moderate," and "Obsessive Compulsive Disorder, by history." (Id. at 180.) He estimated her intellectual functioning as borderline and assessed her GAF at 48. (Id.) Dr. Howland also concluded that Torres was "capable of managing her benefits." (Id.)

On March 20, 2007, Cornelius Neil Kiley, Ph.D., prepared a mental residual functional capacity assessment ("RFCA"), evaluating Torres's condition based on her treatment records with Dr. Gonzalez and Dr. Howland's evaluation. (Id. at 181-96.) Dr. Kiley concluded that Torres suffered from anxiety and depression, but that her symptoms had only a "mild" limitation on her ability to participate in activities of daily living, to maintain social functioning, and to maintain concentration, persistence, or pace. (Id. at 192.) Dr. Kiley classified Torres's impairments as "not severe." (Id. at 182.)

---

[4] The assessment was done on March 5, 2007. (R. at 177.)

At the July 30, 2008 hearing before the ALJ, Torres testified that she stopped working after her lupus diagnosis because she began feeling depressed.[5] (Id. at 28.) Regarding activities of daily living, Torres testified that she could make a simple meal of rice and beans without a recipe, (id. at 30-31), and could sweep and mop, but not vacuum, (id. at 32). She could also use a calculator when grocery shopping to ensure she stayed within her budget. (Id. at 38.) When asked, Torres could also relay her date of birth, phone number, address, and her youngest son's date of birth. (Id.) Regarding her psychiatric symptoms, Torres testified she found it hard to concentrate and frequently worried. (Id. at 28.) At least twice per week she experienced flashbacks of her husband abusing her and worried that someone was following her. (Id. at 36-37.) In her spare time, Torres read Spanish language magazines, (id. at 33), or listened to music, (id. at 34). Torres also reported going to church on Sundays and speaking with family members and friends on the phone. (Id. at 33.)

In her testimony, the vocational expert identified 22,500 jobs in the Southern Massachusetts and Rhode Island area for someone with Torres's abilities and limitations. (Id. at 43.) The VE based her conclusion on a hypothetical assuming a worker of Torres's age, education (ignoring her two years of college and assuming only a high school diploma), and lack of vocational experience. (Id. at 41.) The physical limitations in this hypothetical were based on the results of a physical RFCA.[6] The mental limitations included a "moderate" limitation on her

---

[5] Torres was diagnosed with lupus in December 2004, (id. at 156), but testified that she worked at a daycare, the only job she reported ever having, until 2006, (id. at 28). In his December 2003 report, Dr. Gonzalez wrote that Torres had lost her daycare job "due to stress." (Id. at 238.)

[6] The physical RFCA concluded that Torres could occasionally lift and/or carry twenty pounds, could frequently lift and/or carry ten pounds, and could sit, stand, or walk (with normal breaks) for not more than six hours in an eight-hour workday. (Id. at 231.) The assessment also concluded that Torres could occasionally complete tasks requiring climbing, balancing, stooping, kneeling, crouching, and crawling. (Id. at 232.) As noted above, Torres does not dispute these findings in this appeal.

ability to maintain concentration, persistence, and pace while still able to understand, remember, and complete simple one-, two-, and three-step tasks. (Id.) The VE testified that under these limitations, 15,000 jobs existed at the light exertional level and 7,500 jobs existed at the sedentary level. (Id. at 42-43.) Varying the hypothetical to assume the worker would have a "moderately severe" limitation in concentration, persistence, and pace, and would be off task for one hour during an eight-hour workday, the VE testified that the worker would be unable to meet production standards and therefore could not maintain employment. (Id. at 44.) Additionally, if the worker's concentration, persistence, or pace was "moderately severe" one-third of the time, i.e., more than one hour per day, then the worker would not be able to work. (Id.)

Applying the five-step sequential evaluation process set out in 20 C.F.R. § 416.920(a)(4), the ALJ concluded that Torres was not disabled. (Id. at 22.) Relevant to this appeal are the ALJ's findings that the medical evidence and Torres's testimony regarding her daily activities indicated only "mild" to "moderate" limitations in functioning. (Id. at 19.)

## II. Standard of Review

When reviewing a denial of SSI benefits, the court must determine whether the Commissioner's decision was supported by substantial evidence. 42 U.S.C. § 405(g); see Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). Substantial evidence is evidence "a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 400 (1971); Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner is allowed to make "common-sense judgments about functional capacity based on medical findings, as long as [he] does not overstep the bounds of a lay person's competence and render a medical judgment." Gordils v. Sec'y of Health & Human Servs., 921 F.2d 327, 329 (1st Cir. 1990) (observing a common-sense judgment when

ALJ concludes a claimant could perform sedentary work where there is little information regarding a physical impairment and no express statement made by a physician to the contrary).

The Commissioner is also responsible for determining issues of credibility and evaluating the evidence. Irlanda Ortiz, 955 F.2d at 769; Gordils, 921 F.2d at 330. The Commissioner ultimately decides the question of disability. 20 C.F.R. § 416.927(e)(1); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). The opinion of a treating physician is generally accorded more weight than a non-treating, examining physician. 20 C.F.R. § 416.927(d)(2)(i); Monroe v. Barnhart, 471 F. Supp. 2d 203, 211 (D. Mass. 2007). Although the evidence could support a different conclusion, the Commissioner's decision must be upheld if it is supported by substantial evidence. 42 U.S.C. § 405(g); Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987).

### III.  Legal Analysis

Torres argues that the ALJ's findings are not supported by substantial evidence. The ALJ found that Torres had "mild" difficulties in completing activities of daily living, "moderate" difficulties in maintaining social functioning, and "moderate" difficulties in maintaining concentration, persistence, or pace. (R. at 17.) The crux of the issue comes down to whether these assessments were supported by substantial evidence in the record, because the VE's opinion that there were employment opportunities for Torres depended on the hypothesis that her impairment was "moderate," and not "moderately severe."

Torres first contends the ALJ incorrectly assessed Dr. Gonzalez's reports in concluding that Torres had only a "moderate" impairment of concentration. Torres bases her argument, however, on Dr. Gonzalez's assessments done both before and after she applied for SSI benefits, whereas the ALJ correctly limited her analysis to Torres's symptoms *after* the date of Torres's

7

application for benefits. It is true that in his earlier treatment of Torres from 2003 to 2005, Dr. Gonzalez assessed her symptoms and limitations to have been more severe, but between October 2006 and May 2008, Dr. Gonzalez rated Torres's deficiencies of concentration, persistence, or pace as "moderate" fifteen times and "moderately severe" only three times. Dr. Gonzalez also consistently rated Torres's GAF during this time at 65, indicating "mild symptoms." See Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000).

Dr. Gonzalez's conclusions that Torres had "moderate" deficiencies in concentration and "moderate" limitations in her functioning were consistent with other findings in his reports. He consistently rated Torres's restriction of activities of daily living and difficulties in maintaining social functioning as "moderate." While he sometimes observed certain individual psychiatric symptoms, such as "distractibility" at a "moderately severe" level, Dr. Gonzalez never assigned Torres a GAF less than 60. Moreover, it is the ALJ's responsibility to also evaluate medical opinions for their consistency with the entire record. 20 C.F.R. § 404.1527(d)(4). Between October 2006 and May 2008, Dr. Gonzalez rated Torres's "distractibility" as "moderately severe" just as many times as he found that symptom "not present." In light of the variability of these findings, it would be understandable for the ALJ not to place much weight on them. Overall, Dr. Gonzalez consistently evaluated Torres's symptoms as falling in the mid-range of the six- or five-step scales he used. Thus, as to symptoms, the assessment of "distractibility" as "moderately severe" was the fourth step on the six-step scale, the assessment of her restrictions in daily activities and difficulties in social functioning as "moderate" was the third step on a five-step scale, and the assessment that she would experience deficiencies in concentration, persistence, or pace "often" was likewise the third step on a five-step scale. These mid-range

evaluations provided a substantial basis for the ALJ to make her own mid-range conclusion, preferring "moderate" over "moderately severe" as a description of Torres's impairment.

Torres's second contention disputes the ALJ's failure to give weight to Dr. Gonzalez's summary opinion that because of problems of concentration Torres would be "off task" for more than one hour each work day. A treating physician's conclusory assertions may be doubted if they are not explained or if they contradict the physician's own reports of treatment. Monroe, 471 F. Supp. 2d at 212. Neither Dr. Gonzalez's records nor any other medical opinions give specific support to the conclusion that Torres would be "off task" for more than one hour per day. It was not inappropriate for the ALJ to place more weight on Dr. Gonzalez's progress notes over the course of a year and a half of treatment than on an unelaborated summary response to the "off task" questionnaire.

Torres's third contention is that the ALJ incorrectly discounted Dr. Howland's conclusion that Torres's concentration was severely impaired. It is proper for an ALJ to accord more weight to medical opinions from a treating physician, such as Dr. Gonzalez, than those from non-treating evaluators, such as Dr. Howland. See 20 C.F.R. § 416.927(d)(2)(i). The ALJ considers medical opinions prepared for the record "together with the rest of the relevant evidence" when making her findings. Id. § 404.1527(b). Moreover, Dr. Howland based his conclusions principally on Torres's performance on several mental status exams. While mental status exams may be used to assess limitations in concentration, persistence, or pace, they should be supplemented with other evidence. Id. pt. 404, subpt. P, app. 1, § 12.00(C)(3). Other evidence used to assess limitations in concentration may include observations made in other, non-work, settings. Id.; Monroe, 471 F. Supp. 2d. at 214 n.8 (finding that claimant's ability to perform household chores, use public transportation, maintain personal relationships and mange her

money, undermined examining physician's finding of severe limitations in maintaining concentration, performing activities of daily living, and engaging in social interactions). Torres testified that she was able to perform household chores, to use public transportation, to watch television, to read Spanish magazines, to listen to music, and to use a calculator when calculating her budget; she reported going to church regularly and speaking with friends and family on the phone. Torres's ability to perform well in other settings does not reflect a severe limitation in maintaining concentration. The ALJ was entitled to reject Dr. Howland's conclusions in the face of other evidence of Torres's ability to perform well in other settings that supported the inference that her concentration was not severely impaired. The ALJ's conclusion that "despite her problems with concentration and memory [Torres] is able to function adequately" is reasonable and well-supported in the record evidence. (See id. at 19.)

On all of the evidence, including medical reports from Drs. Gonzalez, Howland, and Kiley, and testimony from Torres and the vocational expert, the ALJ could have reasonably concluded that Torres is not precluded from working and is not disabled. There was no error. Substantial evidence exists in the record to support the Commissioner's decision.

## IV. Conclusion

For the foregoing reasons, the plaintiff's Motion for an Order Reversing the Decision of the Commissioner (dkt. no. 13) is DENIED, and the defendant's Motion for Order Affirming the Decision of the Commissioner (dkt. no. 15) is GRANTED. The decision is AFFIRMED.

It is SO ORDERED.

   /s/ George A. O'Toole, Jr.
United States District Judge